IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| AMBASSADOR TSEGAY GABREMICHEAL | * | CIVIL ACTION NO. 06-0847 |
| VERSUS | * | JUDGE JAMES |
| ALBERTO GONZALES, ET AL. | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241 (Doc. #1) filed by Petitioner, Ambassador Tsegay Gabremicheal ("Gabremicheal") on May 19, 2006. The Government filed a response to Gabremicheal's petition (Doc. #11). Gabremicheal opposed the response (Doc. #14), and the Government filed an additional reply by order of the Court (Doc. #19). For reasons stated below, it is recommended that Gabremicheal's petition be **GRANTED and that he released from custody pending removal upon reasonable restrictions.**

### BACKGROUND

Gabremicheal, a native and citizen of Eritrea, arrived in the United States on December 14, 2004, as a stowaway aboard the M/V Atlantic Forest while the vessel was docked at Morehead, North Carolina. After his apprehension aboard the vessel, immigration and port security officers came aboard and, on December 15, 2004, the USICE notified the appropriate officer of the M/V Atlantic Forest that Gabremicheal was to be detained aboard the vessel for removal from the United States. Gabremicheal was also paroled so that he could depart for a foreign port. By notice dated December 21, 2004, Waterman Shipping Company ("Waterman") and Global Maritime Company, the owners of the M/V Atlantic Forest, were notified that Gabremicheal's parole had been revoked and that he was to be detained for a hearing on his asylum request. On May 3, 2005, Gabremicheal's applications for asylum and for withholding of

removal under Section 241(b)(3) of the Immigration and Nationality Act and Convention Against Torture Act were denied. Gabremicheal timely appealed the decision of the immigration judge to the Board of Immigration Appeals ("BIA"); however, on August 10, 2005, the Board of Immigration Appeals, which had been advised of the withdrawal of Gabremicheal's appeal, returned the record to the Immigration Court.

By letter dated October 28, 2005, counsel for the owners of the M/V Atlantic Forest contacted the then Warden of the Tensas Parish Detention Center to advise him that Gabremicheal had been denied asylum and was set to be released into the owners' custody. Counsel requested that Gabremicheal not be released and that he be held at the Tensas Parish Detention Center in the owners' custody until arrangements could be made to return him to Eritrea. On November 1, 2005, ICE notified counsel that Gabremicheal had been transferred to the owners' custody and that he was to be removed from the United States by the owners at the earliest possible date. Counsel acknowledged receipt of custody of Gabremicheal and stated that the owners would maintain custody of Gabremicheal at the Tensas Parish Detention Center at their expense. On the same day, the Warden of the detention center was notified of the release of Gabremicheal from USICE detention into the custody of Waterman. Gabremicheal remains detained at Tensas Parish Detention Center.

On May 19, 2006, Gabremicheal filed this petition challenging his post-removal detention under the framework the United States Supreme Court established in *Zadvydas v. Davis*, 533 U.S. 678 (2001), claiming that the presumptively reasonable six-month detention period has expired and there is no significant likelihood of his removal in the reasonably foreseeable future. In its first response, the Government claimed that, because Gabremicheal has been transferred to the custody of Waterman, such is the only proper respondent in this matter and that

Gabremicheal was released from their custody into the custody of Waterman within six months of the date his removal order became final. The undersigned ordered the Government to submit supplemental briefing providing authority for this proposition and explaining why the Government is no longer under any obligation to attempt to repatriate Gabremicheal. In response, the Government admitted that the Field Office Director for the New Orleans Office of the USICE is the proper respondent but argued that, although ICE is not relieved of its responsibility to remove Gabremicheal, Waterman remains primarily responsible for housing Gabremicheal and effecting his removal from the United States

## LAW AND ANALYSIS

In reviewing a petition for writ of habeas corpus by a detained alien who is subject to a final order of removal, a federal district court, pursuant to the authority of 28 U.S.C. §2241(c)(3), is to gauge whether a particular set of circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal. In *Zadvydas*[1], the Supreme Court held that 8 U.S.C. § 1231(a)(6), the post-removal-order detention statute, implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal. *Id.* at 688-98. The Court noted that the statute does not permit indefinite detention; the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id.* at 697-702. After that six month period expires, and the immigrant demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish sufficient rebuttal evidence. *Id.*

---

[1] The Supreme Court recently extended its holding in *Zadvydas* to inadmissible aliens in *Clark v. Martinez*, 543 U.S. 371 (2005).

In this case, Gabremicheal's removal order became final in August 10, 2005; therefore, the presumptively reasonable six-month detention period has long since expired. However, the lapse of the presumptive detention period, by itself, does not mandate release, *see Zadvydas*, 533 U.S. at 701, and the petitioner must still give good reason to believe that his removal is unlikely in the foreseeable future. The Government contends that, because Gabremicheal was transferred to the custody of Waterman within six months of when his removal order became final, he has failed to state a valid claim under *Zadvydas* and that it is incumbent upon Waterman to effect Gabremicheal's removal. The undersigned has examined the authority cited by the Government and, although it clearly mandates that the Waterman Shipping Company pay for the costs associated with detaining Gabremicheal and perhaps shoulder some of the responsibility for his removal, this Court is unable to discern any support for the Government's contention that its purported transfer of Gabremicheal to the "legal custody" of Waterman absolves it of the responsibility to attempt repatriation, especially while Gabremicheal remains in jail. *See* 8 U.S.C. §1231(c)-(d).[2] Even accepting the Government's contentions and assuming that Waterman alone has "legal" custody of Gabremicheal, the undersigned has been presented with no authority to support the position that a shipping company acting alone has any legal authority to detain an individual at a local jail, even temporarily, much less indefinitely. Notwithstanding any role that Waterman may play in removing Gabermichael, he is being detained pursuant to the immigration laws of the United States, and the primary enforcement responsibility for those laws

---

[2]*See also* 8 C.F.R. §241.11 ("If detention of the stowaway is required pending removal on other than the vessel or aircraft of arrival, or if the stowaway is to be removed on the vessel or aircraft of arrival but departure of the vessel or aircraft is not imminent and circumstances preclude keeping the stowaway on board the vessel or aircraft, the Service shall take the stowaway into Service custody. The owner is responsible for all costs of maintaining and detaining the stowaway pending removal, including costs for stowaways seeking asylum. . . .").

lies with the USICE.

Regardless of whether USICE or Waterman, or both, are required to effect his removal, the fact remains that Gabremicheal has been detained at the Tensas Parish Detention Center for approximately 18 months. This is not a case of a detainee requesting release as soon as the presumptive six-month detention period expires; that period expired long ago. More importantly, according to the documentation provided to this Court, only one travel document request has been made and that request occurred almost 16 months ago.[3] There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future.[4] Furthermore, there is no evidence that Gabremicheal has been convicted of a crime, that he is a flight risk, or that he poses any threat to the public should he be released. Accordingly, the undersigned finds that Gabremicheal has met his burden of showing that there is no significant likelihood of his release in the reasonable foreseeable future and that he is entitled to release under reasonable restrictions pending removal.

Therefore, it is recommended that Gabremicheal's Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241 be **GRANTED** and that he be released from custody pending removal upon reasonable restrictions.[5]

---

[3]There is a notation on a document submitted by the Government that indicates that an ICE deportation officer spoke with the attorney for Waterman Shipping Co. and was informed that the company had not yet been able to remove Gabremicheal, Gov. Exh. 14; however, this notation falls far short of indicating that any travel document requests have been made by the company or that a travel document is forthcoming even if such requests have been made.

[4]Gabremicheal's petition states that the Eritrean Embassy has denied issuance of a travel document due to the lack of sufficient information to determine if he is an Eritrean citizen.

[5]Although there is a dispute in this case over who the proper respondent is, *Rumsfeld v. Padilla*, 124 S.Ct. 2711 (2004), makes clear that ". . . the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Id.* at 434. The Rumsfeld Court held that "[t]his custodian . . . is 'the person' with the ability to produce the prisoner's body before the

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 31st day of January, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

habeas court" and that ". . . identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.'" Accordingly, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Id.* at 435. *Id.* at 439. Therefore, the fact that custody of Gabremicheal may have been transferred to the Waterman Shipping Co. is of no moment given that he remains in the Tensas Parish Detention Center in the immediate custody of Warden Dale Dauzat, who is named as a respondent in Gabremicheal's petition.